

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-17-2005

# In Re: Cegan

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3807

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re: Cegan " (2005). *2005 Decisions.* Paper 398.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/398

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 04-3807

IN RE: DAVID J. CEGAN

DAVID J. CEGAN,
                                        Appellant

v.

LINDA CEGAN

Appeal from the United States District Court
for the Western District of Pennsylvania
(Civ. No. 03-cv-01876)
District Judge: Hon. Thomas M. Hardiman

Submitted pursuant to Third Circuit LAR 34.1(a)
Friday, September 23, 2005

Before: ROTH, McKEE and FISHER, Circuit Judges

(Opinion filed October 17, 2005)

OPINION

McKEE, Circuit Judge.

        David J. Cegan appeals the district court's order affirming the bankruptcy court's

determination that his obligation to his wife, Linda Cegan, is in the nature of maintenance

or support, and is therefore not dischargeable pursuant to 11 U.S.C. § 523(a)(5).   For the

reasons that follow, we will affirm.[1]

**I.**

Section 523(a)(5) of the Bankruptcy Code states in relevant part that the general discharge which a debtor obtains under 11 U.S.C. § 727(b) for debts that arose before the date of the order for relief:

> does not discharge an individual debtor from any debt . . . to a spouse, former spouse, or child of the debtor, *for alimony to, maintenance for, or support of such spouse or child*, in connection with a separation agreement, divorce decree or other order . . ., or property settlement agreement, but not to the extent that . . . (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support . . . .

11 U.S.C. § 523(a)(5) (emphasis added). Similarly, "'[t]he filing of a petition . . . [in bankruptcy] does not operate as a stay . . . of the collection of alimony, maintenance, or support from property that is not part of the estate.'" *In re Gianakas*, 917 F.2d 759, 761 (3d Cir. 1990) (quoting 11 U.S.C. § 362(b)(2)). "These provisions reflect the congressional preference for the rights of spouses to alimony, maintenance or support over the rights of debtors to a 'fresh start' free of debts." *Id*. (citation omitted).

In determining if a spousal obligation is in the nature of alimony or support and

---

[1] Since we write primarily for the parties who are familiar with this case, we will not set forth the factual or procedural background except insofar as may be helpful to our brief analysis.

Since the district court sat as an appellate court, our review is plenary. *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 353 (3d Cir. 2002). The bankruptcy court's factual findings may not be set aside unless they are clearly erroneous, and we review the bankruptcy court's exercise of discretion for an abuse of discretion. *Id*.

therefore not disposable, "court[s] must look beyond the label attached to an obligation by a settlement agreement to examine its true nature." *Id*. at 762. "Moreover, although the decree or settlement establishing the obligation almost invariably arises in the context of a state court proceeding, whether the obligation is in the nature of alimony, maintenance or support for the purposes of the Bankruptcy Code is a question of federal, not state, law." *Id.* The inquiry turns on "the intent of the parties at the time of the settlement agreement." *Id.*

Three "principal indicators" guide this inquiry: "[f]irst, the court must examine the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary . . . the second indicator . . . in ascertaining the parties' intent is the parties' financial circumstances at the time of the settlement . . . [t]hird, the court should examine the function served by the obligation at the time of the divorce or settlement." *Id.* at 762-763. If . . . the controlling instrument is a court order instead of an agreement between the parties, [the court] must ascertain the intention of the court that issued that order." *In re Brown*, 288 B.R. 707, 712 (Bankr. W.D.Pa. 2003) (citations omitted).

Moreover, the burden of establishing that a debt is not dischargeable falls on the party "who objects to the discharge of a particular debt." *In re Gianakas*, 917 F.2d at 761 (citations omitted). The objecting party must establish nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991).

## II.

Here, David argues that the bankruptcy court erred in concluding that his $190,155 obligation to Linda was excepted from discharge under § 523(a)(5). He claims the obligation was a property settlement, not support. He rests his claim upon two facts. First, the special master recommended that Linda be awarded the sum of $173,352[2] in that portion of her Report captioned "Equitable Distribution of Marital Property." App. 33. Second, the special master recommended that Linda's alimony *pendente lite* order continue "as alimony until such time as wife has received the first $100,000 in cash *incident to the equitable distribution award, after which the alimony shall terminate.*" App. 35. (emphasis added).[3] David thus argues that the cash award was incident to the equitable distribution award, and was therefore excepted from discharge under § 523(a)(5).

We disagree. At a minimum, the first $100,000 of David's obligation was intended to provide maintenance or support for Linda. That is apparent from the special master's recommendation that: "until such time as [Linda] receives a substantial portion of the equitable distribution award, she clearly needs *alimony*." App. at 35 (emphasis added). The special master also noted that "the inevitable interval between the filing of this recommendation and entry of an order implementing it will give the wife an even

[2]Increased to $190,155 by the state court trial judge.

[3]The state court trial judge held that the payments to Linda are to be made consistent with the payout recommended by the special master.

4

longer period of *support*." *Id.* (emphasis added). The state court trial judge adopted the special master's recommendations. That court therefore believed that the first $100,000 of David's obligation to Linda should not be excepted from discharge.

Admittedly, there was no explicit discussion by the special master of the remaining $73,352 (or $90,155 as increased by the state court) obligation to Linda. She did call the entire award "equitable distribution," but also recommended that "[s]hould [David] declare bankruptcy prior to payment of this obligation in full, any outstanding unpaid equitable distribution obligation shall be deemed to be an alimony obligation and not dischargeable in bankruptcy." App. at 33. The special master's recommendation was not, of course, binding on the federal bankruptcy court. Nevertheless, the recommendation supports the conclusion that the special master intended David's entire obligation to be maintenance and support in the event David declared bankruptcy.

Moreover, an analysis of David's and Linda's financial circumstances at the time of the special master's report supports that conclusion. In December 1999, David's monthly income was $4,775. Even though Linda had not been employed for several years and had not passed her nursing boards, the special master determined that Linda had a monthly earning capacity of $1,100. Thus, the disparity in monthly incomes was $3,675.

The special master noted:

This is a long marriage. Even were wife to be fully utilizing her earning

5

capacity, which she is not,[4] her earning potential is vastly inferior to her husband's. Therefore, her opportunities for future acquisition of capital assets and income are considerably less than her husband's.

App. 32. A large disparity between the parties' financial circumstances is evidence that the obligation is intended for support. *In re Brown*, 288 B.R. at 713-715.

Finally, the function served by the entire obligation also supports the conclusion that it was intended as maintenance and support. David was awarded the marital residence. As noted, Linda's estimated monthly income was only $1,100. As the bankruptcy court opined, "unless [Linda] lived in poverty, $1,100 per month would not have been enough for [her] to support herself for long."

## III.

For the reasons set forth above, we conclude that the entire cash award of $173,352 (increased to $190,155 by the state judge) was for maintenance and support and is, therefore, excepted from discharge under § 523(a)(5). Accordingly, we will affirm the district court.

---

[4]She had not passed her nursing boards.